**Michelle L. KAUFFMAN, Appellant,**

v.

**Scott D. TRUETT, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 5, 2001.

Filed March 21, 2001.

---

Beth A.C. Gabler, Chambersburg, for appellant.

Barbara A.B. Townsend, Chambersburg, for appellee.

Before CAVANAUGH, LALLY–GREEN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant/mother, Michelle L. Kauffman, appeals the August 24, 2000 Order terminating appellee/father, Scott D. Truett's, child support obligation. On appeal, mother argues the trial court erred in determining the termination of father's parental rights extinguished his obligation to support his children.

¶ 2 Mother and father are the natural parents of Kayla, born November 5, 1992, and Kyle, born September 2, 1994. The parties ended their relationship in 1995 and, thereafter, mother filed a complaint for child support. On December 6, 1996, the court ordered father to pay child support in the amount of $82.50 per week and directed the attachment of his wages for such collection. Father's support obligation was modified and increased to $116 per week in August 1997. On numerous occasions thereafter, father was found in contempt of court and imprisoned due to his failure to pay support and to cooperate with Domestic Relations. In 1998, mother and her husband, Charles Kauffman, filed a petition to involuntarily terminate father's parental rights. On November 17, 1998, the court entered a decree nisi terminating father's parental rights, to which father filed no exceptions.[1,2] Thereafter, father petitioned Domestic Relations to discontinue his support obligation due to the termination decree. On May 11, 2000, the hearing officer dismissed the petition without prejudice, to which father filed an appeal. On August 24, 2000, the trial court found father's support obligation ended on November 17, 1998, when his parental rights were terminated, and, thus, father did not have to pay arrearages from that date forward. This timely appeal followed.

¶ 3 On appeal, mother presents one issue for our review, "Whether the Court's Order terminating the obligor/father's duty of support as of the date of termination of parental rights and not the date of adoption was an error of law in that the statute clearly distinguishes between termination to an agency and termination to an adult and support should have stopped as of the date of adoption." (Appellant's brief at 4.)

Our scope of review in child support cases is well settled. We will not dis-

---

1. Franklin County Orphans' Court Rule 39–15.4, **Involuntary Termination of Parental Rights,** provides in relevant part, "the Decree Nisi shall become final unless written exceptions are filed with the Court within ten (10) days from the mailing of the notice."

2. Father's parental rights were terminated in anticipation of mother's husband adopting the children, which occurred on July 11, 2000.

turb a child support order absent an abuse of discretion, resting upon clear and convincing evidence. An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable.

*Klahold v. Kroh,* 437 Pa.Super. 150, 649 A.2d 701, 703 (1994) (citations omitted).

¶ 4 In this case, mother contends father relinquished his parental rights in anticipation of his children being adopted by mother's husband and, thus, his support obligation did not terminate until the adoption was complete. Mother contends the trial court erred in relying on *Monroe County Children & Youth Services v. Werkheiser,* 409 Pa.Super. 508, 598 A.2d 313 (1991), to support its finding that father's support obligation ended when the court terminated his parental rights. In *Werkheiser,* the trial court granted Monroe County Children and Youth Services' petition for the termination of the mother's parental rights. A hearing was held to determine the mother's support obligation, after which the trial court determined the mother's obligation ended as of the date of the termination of parental rights. On appeal, this Court stated:

*It is undisputed that the obligation to support the children flows from the existence of the relation of parent and child.* Since the parties agree that termination of parental rights absolves the parent of her duty to pay support the precise issue is when, in the context of a case wherein a terminated parent appeals the trial court's order, the termination order can be said to have had this effect. We hold that when a final, appealable order is entered by the trial court terminating appellant's parental rights, her obli-

gation to pay support is also terminated. . . .

*Werkheiser,* 598 A.2d at 315 (emphasis added).

¶ 5 Mother contends this Court must not rely on the rationale in *Werkheiser* because that case involved the termination of parental rights at the behest of an agency. She argues the Adoption Act makes a distinction between the rights and duties relinquished to an agency and those relinquished to an individual. She cites section 2503, **Hearing,** (c), **Decree,** of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2910, to support her contention that when parental rights are relinquished to an individual, the court's decree does not terminate the parent's *duties* to his or her child. Mother argues a parent's duties to his or her child are terminated only upon the relinquishment of the parent's rights to an agency under section 2501, **Relinquishment to agency.**

¶ 6 Sections 2501 and 2502, **Relinquishment to adult intending to adopt child,** of the Adoption Act contemplate that if one is going to *voluntarily* relinquish his or her parental rights, it is to be done to an agency or to an individual. Section 2503 states in relevant part:

(a) **General rule.**—Upon presentation of a petition prepared pursuant to section 2501 (relating to relinquishment to agency) or section 2502 (relating to relinquishment to adult intending to adopt child), the court shall fix a time for hearing which shall not be less than ten days after filing of the petition.

. . .

(c) **Decree.**—After hearing, which shall be private, the court may enter a decree of termination of parental *rights* in the case of their relinquishment to an adult or a decree of termination of parental *rights and duties, including the obli-*

gation of support, *in the case of their relinquishment to an agency.*

23 Pa.C.S.A. § 2503(a) and (c) (emphasis added).

¶ 7 In this case, however, mother and her husband, who wanted to adopt the children, filed a petition under section 2512, **Petition for involuntary termination,** to involuntarily terminate father's parental rights. The decree terminating father's parental rights indicates, "[t]he petitioners are hereby authorized to proceed with the adoption of the children by Charles Kauffman without further notification to Scott Truett." It is clear, therefore, father did not voluntarily relinquish his rights pursuant to section 2502, as the statute only addresses those instances where the parent bringing the petition is the one whose rights will be terminated. "Common sense dictates that this statute is not meant to allow one parent to petition for the voluntary termination of the parental rights of the other parent." *In re Adoption of Stickley,* 432 Pa.Super. 354, 638 A.2d 976, 978 (1994), *appeal denied,* 538 Pa. 659, 648 A.2d 790 (1994). Sections 2502 and 2503, therefore, are inapplicable to this case. We recognize this distinction in an attempt to place this matter in its correct procedural posture.

¶ 8 Furthermore, we are mindful that this is not a case of a non-custodial parent seeking to terminate his or her support obligation. It is well settled that the "obligation to support one's child is not dependent upon a parent's having custody of a child." *Luzerne County Children & Youth Services v. Cottam,* 412 Pa.Super. 268, 603 A.2d 212, 214 (1992), *appeal denied,* 530 Pa. 666, 610 A.2d 45 (1992). In this case, however, father's parental rights were terminated and his parent-child relationship was severed. "Termination of parental rights is the death sentence to a parent-child relationship." *In Interest of Coast,* 385 Pa.Super. 450, 561 A.2d 762, 778 (1989). This notion is particularly striking in the situation herein, where mother filed the petition to involuntarily terminate father's parental rights in anticipation of establishing a new parent-child relationship for her children. *See In re E.,* 474 Pa. 139, 377 A.2d 153 (1977) (legislature intended petition for involuntary termination of parental rights to be used as aid to adoption).

¶ 9 In light of the foregoing discussion, we agree with the rationale of *Werkheiser* and find father's support obligation ended upon the termination of his parental rights. We find it curious mother previously argued father's inability to fulfill his parental duties, which include the care, control, love, protection and support of his children, and now argues father should be held accountable for the same support obligation after his parent-child relationship is severed. We decline to accept such an argument and, therefore, affirm the order ending father's support obligation as of the date of the termination of his parental rights.

¶ 10 Order affirmed.

¶ 11 Jurisdiction relinquished.