J-S30034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.T., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.T., Natural Mother | : | No. 2058 MDA 2016 |

Appeal from the Decree entered November 18, 2016
in the Court of Common Pleas of Luzerne County,
Orphans' Court Division, No(s): A-8454

| | | |
|---|---|---|
| IN THE INTEREST OF: K.R.T., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.T., Natural Mother | : | No. 2059 MDA 2016 |

Appeal from the Decree entered November 18, 2016
in the Court of Common Pleas of Luzerne County,
Orphans' Court Division, No(s): A-8455

| | | |
|---|---|---|
| IN THE INTEREST OF: N.N.T., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.T., Natural Mother | : | No. 2060 MDA 2016 |

Appeal from the Decree entered November 18, 2016
in the Court of Common Pleas of Luzerne County,
Orphans' Court Division, No(s): A-8457

BEFORE: SHOGAN, RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JUNE 12, 2017**

J.T. ("Mother") appeals from the Decrees[1] voluntarily terminating her parental rights to N.N.T., a daughter born in September 2012, J.M.T., a son born in November 2013, and K.R.T., a son born in December 2014 (collectively, "Children").[2]   Additionally, Thomas W. Sharkey, Esquire ("Attorney Sharkey"), Mother's counsel, has filed a Petition for Leave to Withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967).  We grant Attorney Sharkey's Petition for Leave to Withdraw and affirm the trial court's Decrees.

Relevantly, on August 8, 2016, Luzerne County Children and Youth Services ("CYS") filed Petitions to involuntarily terminate Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).  In the Petitions, CYS alleged that Children have been in CYS custody since December 2014, Mother has not had any contact with Children since January 2016, and Mother has not performed any parental duties since that time.

The trial court conducted a hearing on the Petitions on November 16, 2016, at which Mother appeared with Attorney Sharkey.  On the same date, Mother filed Petitions for voluntary relinquishment of her parental rights to Children.  The guardian *ad litem* appointed to represent Children, conducted a colloquy of Mother with respect to her voluntary relinquishment of parental rights.  Counsel for CYS cross-examined Mother, during which Mother waived

---

[1] This Court, *sua sponte*, consolidated Mother's appeals from the Decrees.

[2] The trial court also entered Decrees terminating the parental rights of Children's father, D.T., who is not a party to the instant appeal.

notice of a voluntary relinquishment proceeding. At the conclusion of the colloquy, the trial court indicated to Mother that it accepted her voluntary relinquishment of her parental rights, believing that she had done so knowingly, willingly and voluntarily.

The trial court then received evidence from CYS caseworker Cindy Jones ("Jones") regarding Children's best interests, pursuant to Section 2511(b). At the conclusion of the evidentiary hearing, the trial court noted on the record that it had signed the Decrees accepting Mother's voluntary relinquishment of parental rights.[3]

Attorney Sharkey, on behalf of Mother, filed timely Notices of Appeal, and a Concise Statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On February 21, 2017, Attorney Sharkey filed a Petition for Leave to Withdraw as Counsel.

Before reviewing the merits of Mother's claims, we must first determine whether Attorney Sharkey has complied with the dictates of **Anders** in petitioning to withdraw from representation. **See In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014). This Court has extended the **Anders** principles to a first appeal by an indigent parent from a decree involuntarily terminating his or her parental rights. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992). Pursuant to **Anders**, when an attorney believes that an appeal is frivolous and wishes to withdraw as counsel, he or she must

---

[3] Although the trial court signed the Decrees during the termination hearing, they were not entered on the docket until November 18, 2016.

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the [client], counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to [the client] and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

With respect to the third requirement of *Anders*, that counsel inform the client of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has determined that a proper *Anders* brief must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Once counsel has satisfied the above requirements, this Court "must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

Here, Attorney Sharkey has complied with the requirements set forth in **Anders** by indicating that he made a conscientious review of the record and determined that an appeal would be wholly frivolous. Further, the record contains a copy of the letter that Attorney Sharkey sent to Mother, informing her of Attorney Sharkey's intention to withdraw and advising her of her right to proceed *pro se*, retain counsel, and file additional claims. Finally, Attorney Sharkey's **Anders** Brief meets the standards set forth in **Santiago**. Because Attorney Sharkey has complied with the procedural requirements for withdrawing from representation, we will independently review the record to determine whether Mother's appeal is, in fact, wholly frivolous.

In the **Anders** Brief, the following questions are presented for our review:

> I. Whether the [t]rial [c]ourt erred in granting voluntary relinquishment of parental rights pursuant to the requirements of the Adoption Act of 1980, October 15, [P.L.] 934, No. 163 § 1, *et* [*s*]*eq.*[?]
>
> > a. Whether the trial court abused its discretion, committed an error of law, and/or that there was insufficient evidentiary support for the [c]ourt's decision[,] in accepting [Mother's] voluntary relinquishment as knowingly, voluntarily, and willingly given?
> >
> > b. Whether the trial court abused its discretion, committed an error of law, and/or that there was insufficient evidentiary support for the [c]ourt's decision that the best interests of [Children] would be served by terminating [Mother's] parental rights?

II. Whether [CYS] acted improperly in seeking to terminate [Mother's] parental rights[?]

**Anders** Brief at 4. Mother neither filed a *pro se* brief, nor retained alternate counsel for this appeal.

We will address Mother's claims together. In her first claim, Mother argues that the trial court erred in accepting her voluntary relinquishment as knowingly, voluntarily, and willingly given. **Anders** Brief at 7. Mother also claims that the trial court erred in concluding that the best interests of Children would be served by the termination of her parental rights. **Id.** at 10-11. In her second claim, Mother asserts that CYS acted improperly in seeking to terminate her parental rights. **Id.** at 12-13.

> Appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

**In re C.M.C.**, 140 A.3d 699, 704 (Pa. Super. 2016) (brackets and internal citations omitted).

A parent may relinquish her parental rights to an agency with written notice and court approval. **See** 23 Pa.C.S.A. § 2501. Further, "[a] party seeking to disturb a termination decree must show that the consent given to

terminate parental rights was not intelligent, voluntary and deliberate." **In re M.L.O.**, 416 A.2d 88, 90 (Pa. 1980).

During the colloquy, Mother testified, *inter alia*, that she understood the nature of the proceedings; she wished to voluntarily relinquish her rights to Children; she had the opportunity to consult counsel; her decision was voluntary; and she believed the voluntary relinquishment of her parental rights was in Children's best interests. **See** N.T., 11/16/16, at 13-17. The trial court noted in its Opinion, and we agree, that nothing in the record suggests that Mother misunderstood the impact of her choice. **See** Trial Court Opinion, 1/17/17, at 8. Upon review, and discerning no abuse of discretion by the trial court, we conclude that Mother's voluntary relinquishment of her parental rights was intelligent, voluntary and deliberate.

With regard to Section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. **See In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **See id.** In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. **In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). There is no bond worth preserving between a child

and a biological parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Further, it is appropriate to consider a child's bond with his or her foster parent(s). *In re T.S.M.*, 71 A.3d at 268.

At the termination hearing, Jones testified that N.N.T. and J.M.T. have been living with their foster parents since March 2015,[4] and K.R.T. was placed with his foster parents shortly after his birth in December 2014. *See* N.T., 11/16/16, at 27, 28, 30. Jones testified that Children have been assimilated into their respective pre-adoptive homes, and stated her belief that the foster families would be permanent resources for Children. *See id.* at 28-29. According to Jones, both families are willing to facilitate the relationship between the siblings. *See id.* at 30. Jones also testified that Children's respective pre-adoptive parents meet their physical, developmental and emotional needs. *See id.* at 30-31. Regarding the bond between Mother and Children, Jones testified that "there's certainly a comfort level with [Mother], but it's more of a play time." *Id.* at 32. By contrast, Jones described the bond between Children and their pre-adoptive parents as a parent-child bond. *See id.* at 33. According to Jones, Children's bond with their pre-adoptive parents is stronger than their bond with Mother. *See id.* Jones testified that there would be no detrimental

_____

[4] N.N.T. and J.M.T. were placed with their maternal aunt in December 2014, and subsequently with another foster family prior to their current placement.

effect if the trial court terminated Mother's parental rights. *See id.* at 34. Additionally, Jones testified that the termination of Mother's parental rights would have a beneficial impact on Children, because they "would be able to stay in the homes that they've been familiar with and have been thriving in[,] and they'd be provided with permanency." *Id.* at 35.

Based on Jones's testimony, the trial court concluded that it is in Children's best interests to terminate Mother's parental rights, and their respective pre-adoptive parents adequately provide for their needs and welfare. *See* Trial Court Opinion, 1/17/17, at 10-11. Upon review, we agree with the trial court's determination that termination was in Children's best interests pursuant to Section 2511(b).

Finally, we decline to afford Mother relief on her claim that CYS acted improperly in seeking to terminate her parental rights. The record reflects that Mother has failed to perform her parental duties for a period of at least 6 months. *See* 23 Pa.C.S.A. § 2511(a)(1). Children have been in CYS care since December 2014. At the time of the termination hearing, Mother had not visited N.N.T. and J.M.T. since January 2016, and she had not visited K.R.T. since March 2015. *See* N.T., 11/16/16, at 32. Jones also testified that Mother was not compliant with her drug and alcohol treatment, as required by the family services plan. *Id.* at 40. According to Jones, Mother was not eligible to participate in her required parenting education because

she had not been compliant with the other services. *Id.* at 41. Thus, CYS had sufficient reason to seek the termination of Mother's parental rights.

Further, our independent examination of the record indicates that there are no other non-frivolous claims that can be raised. *See In re S.M.B.*, 856 A.2d at 1237. Accordingly, we conclude that Mother's appeal is frivolous, and Attorney Sharkey is entitled to withdraw as counsel.

Petition for Leave to Withdraw granted; Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017