J-S29016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.L.H. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.Y., MOTHER | : | |
| | : | |
| | : | No. 291 WDA 2022 |

Appeal from the Order Entered February 3, 2022
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 134 of 2021

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.R.G. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.Y., MOTHER | : | |
| | : | |
| | : | No. 292 WDA 2022 |

Appeal from the Order Entered February 3, 2022
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 132 of 2021

| | | |
|---|---|---|
| IN RE: ADOPTION OF: O.B.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.Y., MOTHER | : | |
| | : | |
| | : | No. 293 WDA 2022 |

Appeal from the Order Entered February 3, 2022
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No. 133 of 2021

J-S29016-22

BEFORE:    PANELLA, P.J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED: September 09, 2022**

A.Y. (Mother) appeals from the orders accepting her voluntary relinquishment of parental rights to her three children and terminating her parental rights.  In addition, Andrew Skala, Esquire (Counsel), has filed a petition to withdraw and **_Anders_**[1] brief asserting that this appeal is frivolous. After careful review, we grant Counsel's petition to withdraw and affirm the orders.[2]

This case involves J.L.H. (born November 2015), O.B.B. (born October 2011), and A.R.G. (born October 2009).[3]  The children were in protective care in August 2019, when the Westmoreland County Children's Bureau (Agency) initiated dependency proceedings.   The Agency alleged aggravated circumstances based on Mother being an indicated perpetrator of physical discipline, which resulted in Mother being charged with aggravated assault of

_____

* Retired Senior Judge assigned to the Superior Court.

[1] **_Anders v. California_**, 386 U.S. 738 (1967).

[2] This Court consolidated the appeals _sua sponte_.  Order, 6/2/22.

[3] J.C.D.H. is the biological father of J.L.H and putative father of A.R.G.; T.F.G. is the father of O.B.B.  The orphans' court terminated the parental rights of J.C.D.H., T.F.G., and "any unknown biological father of A.R.G."  Orphans' Court Opinion, 3/25/22, at 1.  No father has appealed.

- 2 -

a child less than six years old and endangering the welfare of children.[4] Mother also struggled with drug abuse and mental health issues. The juvenile court entered an order confirming the Agency's custody "in light of Mother being in police custody." Order, 9/9/19, at 1. The order included the following findings:

> The case [has] remained open … with ongoing providers and services to the family. There have been extensive and continued referrals to the [A]gency. There has been a lack of compliance with services over time. … Mother's arrest on August 16, 2019, was relative to an incident that occurred with [J.L.H.], on April 21, 2019, when Mother caused physical injuries to the minor child[.]

Order, 9/9/19 (with attached Findings of Fact at 1, 3).

Thereafter, the juvenile court held regular permanency review hearings. On October 7, 2021, the Agency petitioned to involuntarily terminate Mother's parental rights to the children. A hearing was scheduled for November 17, 2021, and continued to February 3, 2022. In January 2022, the Agency filed a pre-trial statement listing witnesses and exhibits. The court explained:

> This matter came before the [c]ourt on February 3, 2022, at a time and place originally scheduled for an involuntary termination of parental rights [hearing] for [Mother,] pertaining to all three minor children, A.R.G., O.B.B., and J.L.H. Additionally, the [c]ourt heard on that date the involuntary terminations of Appellee J.C.D.H., who is birth father of J.L.H. and the putative father of A.R.G., and T.F.G., who is the biological father of O.B.B., as well as any unknown biological father of A.R.G.

---

[4] On July 20, 2020, at CP-65-CR-0003657-2019, Mother entered a negotiated guilty plea to endangering the welfare of children, 18 Pa.C.S.A. § 4304. The felony charges were dismissed and the trial court sentenced Mother to two years of probation.

Prior to the start of the hearing, Mother and her counsel reached the decision that it was in both Mother's best interest and in the best interests of the children for her to voluntarily relinquish her parental rights, rather than proceed with a hearing on the petition for involuntary termination. **Mother's counsel prepared and presented three (3) separate Petitions for Voluntary Relinquishment of Parental Rights and Waivers of 10-Day Notice, which Mother properly executed prior to the [c]ourt going on the record**.

When the [c]ourt called the case, Mother's counsel indicated that Mother had executed the said Petitions and Waivers and now wished to voluntarily relinquish her parental rights. A full colloquy pertaining to Mother's rights to have a hearing on the voluntary relinquishment was offered, during which Mother indicated that she fully understood and was voluntarily relinquishing her parental rights to the children. After the colloquy was completed, the [c]ourt determined that Mother was making a knowing and voluntary decision and granted her petition to voluntarily relinquish her parental rights to A.R.G., O.B.B., and J.L.H.

Orphans' Court Opinion, 3/25/22, at 1-2 (emphasis added).

Mother timely filed notices of appeal and concise statements pursuant to Pa.R.A.P. 1925. Mother claimed the court erred in finding she "knowingly, deliberately and voluntarily relinquished" her parental rights under 23 Pa.C.S.A. § 2501. Rule 1925 Concise Statement, 3/2/22, at 2.

As noted, Counsel has filed a petition to withdraw and ***Anders*** brief.[5] Therefore, we first address Counsel's request to withdraw. ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported ***Anders*** brief, this Court may not review the

---

[5] ***Anders*** principles apply to appeals involving termination of parental rights. ***See In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

- 4 -

merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

> Additionally, an **Anders** brief must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. Super. 2009).

Instantly, Counsel has filed a petition to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is frivolous. Counsel attached to his petition to withdraw a copy of his letter to Mother, advising Mother of her right to respond. In addition, Counsel has filed a brief that includes a summary of the case history, issues raised by Mother, and Counsel's assessment of why the issues are frivolous, along with citations to legal authority. We conclude that Counsel has substantially complied with the requirements of *Anders*. *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with *Anders* requirements is sufficient).

We next review the issues in the *Anders* brief, and "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel presents the following issues on Mother's behalf:

I.    Did the Trial Court err when it terminated the parental rights of [Mother] pursuant to 23 Pa.C.S. [§] 2501 (PA Adoption Act)?

II.   [Did t]he Trial Court err when it made a finding that [Mother] knowingly, deliberately and voluntarily relinquished her parental Rights at the hearing[?]

*Anders* Brief at 7.[6]

> The Pennsylvania Supreme Court has explained:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

> With respect to a parent's voluntary relinquishment of rights:

> Chapter 25 of the [Adoption] Act governs both voluntary relinquishment and involuntary termination of parental rights. This Court has stated, "Parental relinquishment and involuntary termination are ... mutually exclusive, and a determination must be made as to which and when one or the other applies.  This is a judicial function in which the judge exercises his discretion in conformity with the facts and the law."  *A.M.B.*, 812 A.2d [659,] 666 [(Pa. Super. 2002)].

> The Act provides two alternative procedures with respect to the voluntary relinquishment of parental rights.  The parent may file a petition to relinquish parental rights pursuant to Section 2501 (Relinquishment to agency) or Section 2502 (Relinquishment to adult intending to adopt the child).  …  We explained therein:

---

[6] The Agency advised it would not be filing a brief, stating that "[a]fter review of these pleadings, [the Agency] agrees with the position detailed in the *Anders* Brief that Mother's appeal of the Voluntary Relinquishment Petitions has no merit.  [The Agency] believes the record and the well-reasoned Opinion of the trial court stand for themselves in this matter."  Letter, 7/25/22.

The Adoption Act requires the trial court to hold a hearing, and for the relinquishing parent to ratify his or her consent to termination, no less than 10 days after the petition is filed. *See* 23 Pa.C.S. § 2503(a). The comment to Section 2503 explained:

Subsection (a) is amended to make the petitioner's appearance at the hearing mandatory. **The petitioner's in-court ratification of consent assures due process requirements in view of the finality of the termination decree as to the parent**.

23 Pa.C.S. § 2503(a) cmt.

*C.M.C.*, 140 A.3d [699,] 709 [(Pa. Super. 2016)].

Our Supreme Court has stated that the "consent prescribed by the Adoption Act is a parental consent that is intelligent, voluntary and deliberate." *In re M.L.O.*, 490 Pa. 237, 416 A.2d 88, 90 (1980) (citation omitted). As such, this Court has explained "that the purpose of the hearing on the petition for voluntary relinquishment is to insure an intelligent, voluntary, and deliberate consent to the termination of parental rights." *C.M.C.*, 140 A.3d at 711 (citation omitted).

*In re Adoption of A.W.*, 230 A.3d 1139, 1143-44 (Pa. Super. 2020) (emphasis added). The party must show that the consent was not intelligent, voluntary and deliberate. *In re M.L.O.*, 416 A.2d at 90.

The procedural history of this case is analogous to *Interest of A.F.*, 277 A.3d 1126 (Pa. Super. Apr. 8, 2022) (unpublished memorandum).[7] In

_____

[7] The Superior Court's unpublished non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b).

that case, the agency filed petitions for the involuntary termination of mother and father's parental rights. *Id.* at *2.

> [P]rior to the commencement of the hearing, the parents advised of their desire to voluntarily terminate their parental rights and presented petitions for voluntary relinquishment of parental rights. Father waived the requisite 10-day notice requirement and requested that the hearing proceed on his petitions that day, instead of completing the hearing on the involuntary termination petitions. Counsel then proceeded to conduct a colloquy of Father[.]

*Id.* (footnotes and citations omitted). At the close of the hearing, the orphans' court announced its decision to grant father's petitions and voluntarily terminate his parental rights. *Id.* at 3. The court entered its decision on the record, and father appealed. *Id.* This Court consolidated the appeals and father's counsel filed an *Anders* brief. *Id.* at 3-4. After finding that counsel had complied with *Anders*, we reviewed father's claim that the orphans' court erred in finding his consent to termination to be intelligent, voluntary and deliberate. *Id.* at 4. Upon review, we concluded that father was not entitled to relief.

As noted, we review the orphans' court's decision for an abuse of discretion. *In re T.S.M.*, *supra.* The law provides that a parent may voluntarily relinquish parental rights to an agency pursuant to 23 Pa.C.S.A. § 2501. Orphans' Court Rule 15.2 governs the content of a voluntary relinquishment petition, exhibits, and the notice and hearing (including the provision that a "parent may waive in writing the right to such notice."). Pa.O.C.R. 15.2(a)-(c); *see also In re C.M.C.*, 140 A.3d at 710 ("pursuant to

Pa. O.C. Rule 15.2(c), Mother could have waived notice of the relinquishment hearing in writing").

Here, like the father in *Interest of A.F.*, Mother presented petitions for voluntary relinquishment of parental rights as to each child, consistent with the aforementioned rules and statutory requirements.

> At the hearing, [Mother's counsel] informed the [c]ourt that Mother signed the voluntary termination petitions for all three (3) children along with the Waivers of Notice. (Termination of Parental Rights Hearing, Page No. 1). As a result, Mother was called to the stand by [her counsel]. Mother informed the [c]ourt that she was thirty-one (31) years of age and is presently employed by Eat N Park. She has never been married. (T.P.R. P. No. 2). Mother informed the [c]ourt that she was the natural mother of A.G., O.B, and J.H. and stated their birthdates on the record along with who was their natural father. (T.P.R. P. No. 5 - 6). During the colloquy conduction, Mother acknowledged that once her rights were voluntarily relinquished, it is final and irrevocable. (T.P.R. P. No. 6). Mother further stated that she had adequate time to consider her decision, her decision was deliberate and voluntary, and that she was not threatened by anybody to give up her parental rights. (T.P.R. P. No. 7). An inquiry was made by [Mother's counsel], asking Mother as to whether or not she had taken any medication, drugs or alcohol that would affect her ability to understand her rights and what she is doing in the courtroom. Mother responded "no". Mother additionally stated that she was not a patient in a mental institution or hospital. And, she wanted to receive counseling. (T.P.R. P. No. 8).
>
> At the proceeding, Mother testified that she wanted to proceed in relinquishing her parental rights to her three children. She signed the petitions on February 3, 2022. And, she believed that it was in her best interest to terminate her rights. (T.P.R. P. No. 9). On cross-examination, [the Agency's counsel] inquired if it would be in [Mother's] best interest to terminate her rights. Consequently, Mother testified "yes". (T.P.R. P. Nos. 9 - 10).

*Anders* Brief at 13-14.

Mother's testimony was "plain and unequivocal." ***See Interest of A.F.*** at *7. The orphans' court explained:

> As part of the colloquy, Mother was asked if she had received or was interested in receiving counseling for the decision to voluntarily relinquish her rights, as is required by 23 Pa.C.S.A. [§] 2505. When asked, she responded, "Yes." ***See*** Transcript of February 3, 2022 Hearing (hereinafter "2/3/22 Hrg."), p. 8. According to Mother's Petition for Voluntary Relinquishment, Mother had not received any counseling prior to that date, so it can be inferred that Mother was expressing a desire to have counseling in the future.
>
> Section 2505 of the Adoption Act requires that a court shall compile a list of providers available for counseling parents who are contemplating relinquishment of parental rights. Additionally, a court must inquire prior to terminating a parent's rights if he or she had received counseling; if a request is made by the parent, section 2505(c) states that a court "may, with the parent's consent, refer the parent..." for counseling, but the court shall not delay the completion of any hearing by a period of more than fifteen days. Lastly, section 2505 (d) grants the court discretion to make such a referral or not, depending upon whether the court believes that such a referral would be in the best interest of the parent.

Orphans' Court Opinion, 3/25/22, at 2-3.

The orphans' court concluded, "Mother completed her colloquy on the record and did so without appearing to the [c]ourt to be overly distraught or struggling with her decision. Finally, Mother never requested a continuance of the matter in order to receive counseling." ***Id.*** at 3.

Upon review, we discern no abuse of discretion in the orphans' court's determination that Mother's consent to termination was deliberate and voluntary. We therefore agree with Counsel that Mother's issues lack merit. In addition, our independent review of the record reveals no non-frivolous

issues to support Mother's appeal. Accordingly, we grant Counsel's petition to withdraw and affirm the orphans' court.

Counsel's petition to withdraw granted. Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/09/2022